1
2
3
4                         **UNITED STATES DISTRICT COURT**
5                               **DISTRICT OF NEVADA**
6
7    ROBERT D. HUGHES et al.,              )
                                           )
8               Plaintiffs,                )
                                           )          2:13-cv-00142-RCJ-CWH
9           vs.                            )
                                           )
10   ETHEL M. CHOCOLATES, INC. et al.,     )                 **ORDER**
                                           )
11              Defendants.                )
     _____)

12          This is a wrongful death and survival action.  Pending before the Court are a Motion to
13   Dismiss (ECF No. 4) and a Motion to Remand (ECF No. 25).  For the reasons given herein, the
14   Court denies both motions.

15   **I.     FACTS AND PROCEDURAL HISTORY**

16          On December 23, 2010, Plaintiff Robert D. Hughes was visiting M&M's World in Las
17   Vegas, Nevada with his wife Sylvia G. Hughes, their daughters Jacqueline Markowitz and Lisa
18   Freedman, Jacqueline's husband Warren, Jacqueline's and Warren's children Morgan, Zachary,
19   and Abigail, Lisa's husband John, and Lisa's and John's children Rebecca and Georgina, when
20   Sylvia tripped and fell on an escalator leading from the fourth floor to the third floor due to the
21   wide spacing between the escalator's steps, resulting in one to two weeks of medical care and her
22   eventual death on January 16, 2011. (First Am. Compl. ¶¶ 29–36, Jan. 9, 2013, ECF No. 1-1, at
23   39).  Robert Hughes witnessed the fall, and Jacqueline and Lisa witnessed Sylvia immediately
24   after the fall. (*Id.* ¶ 34).  Plaintiff Karen Hughes is also Sylvia's daughter, but she is not alleged
25   to have been present at the scene of the accident. (*See id.* ¶ 4).

1    Plaintiffs Robert Hughes, both individually and in his capacity as the administrator of

2    Sylvia Hughes's estate (the "Estate"), Jacqueline Markowitz, Lisa Freedman, and Karen Hughes

3    sued Defendants Ethel M. Chocolates, Inc., Mars Chocolate North America, LLC, Mars Retail

4    Group, Inc., Mars, Inc. (collectively, "Mars"), Showcase Mall Joint Venture ("Showcase"),

5    Forest City Rental Properties Corp. ("Forest City"), CCR/AG Showcase Phase I Owner, LLC

6    ("CCR/AG"), Showcase Retail Management Services, LLC ("Showcase Retail"), Schindler

7    Elevator Corp. ("Schindler"), and Otis Elevator Co. ("Otis") in state court.  The First Amended

8    Complaint ("FAC") lists eight nominal causes of action: (1) negligence (against Schindler and

9    Otis); (2) negligence (against Mars, Showcase, Showcase Retail, Forest City, and CCR/AG); (3)

10   negligence per se (against Schindler and Otis); (4) negligence per se (against Mars, Showcase,

11   Showcase Retail, Forest City, and CCR/AG); (5) negligent infliction of emotional distress

12   ("NIED") (by all Plaintiffs except Karen Hughes against all Defendants); (6) strict liability

13   (against Schindler); (7) breach of warranty (against Schindler); and (8) wrongful death.[1]

14   Defendants removed.  Mars has moved to dismiss the claim for punitive damages for failure to

15   state a claim.  Plaintiffs have stipulated to dismiss all claims against Ethel M. Chocolates, Inc.

16   and Mars Chocolate North America, LLC without prejudice.

17   **II.    LEGAL STANDARDS**

18        **A.    Remand**

19        District courts have original jurisdiction in cases where all plaintiffs are diverse from all

20   defendants and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).  A defendant

21   may remove a case filed in state court to the federal district court where the federal court would

22   have had original jurisdiction had the case been filed there. *Id.* § 1441(a).  Under the "forum

23

24        [1]The third and fourth nominal causes of action are redundant with the first and second,
respectively, as negligence per se is not a separate theory of liability but a legal doctrine affecting
25   the negligence claims.

1    defendant rule," however, defendants who are citizens of the forum state may not remove cases

2    where federal jurisdiction is based purely upon § 1332(a). *Id.* § 1441(b)(2).  In any case removed

3    to a district court where it later appears that the court lacks subject matter jurisdiction, the court

4    must remand the case to the state court. *Id.* § 1447(c).

5         **B.    Dismissal**

6         Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

7    claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

8    what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

9    (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

10   that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule

11   12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720

12   F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for

13   failure to state a claim, dismissal is appropriate only when the complaint does not give the

14   defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*

15   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is

16   sufficient to state a claim, the court will take all material allegations as true and construe them in

17   the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

18   Cir. 1986).  The court, however, is not required to accept as true allegations that are merely

19   conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

20   *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

21   with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation

22   is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*,

23   550 U.S. at 555).

24        "Generally, a district court may not consider any material beyond the pleadings in ruling

25   on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the

1   complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

2   *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents

3   whose contents are alleged in a complaint and whose authenticity no party questions, but which

4   are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

5   motion to dismiss" without converting the motion to dismiss into a motion for summary

6   judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule

7   of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

8   *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court

9   considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

10  summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.

11  2001).

12  **III.    ANALYSIS**

13          **A.    Remand**

14          Plaintiffs argue a lack of complete diversity.  Specifically, they argue that Defendants

15  Showcase and Showcase Retail are not diverse with Plaintiffs Robert Hughes and Markowitz,

16  because all of these parties are Nevada citizens.  Also, under the "forum defendant rule," which

17  is an independent bar to removal regardless of complete diversity, Showcase and Showcase

18  Retail cannot remove a case to federal court in Nevada.  Plaintiffs adduce only the unverified

19  First Amended Complaint ("FAC") in support.  Plaintiffs allege that Robert Hughes and

20  Markowitz are Nevada residents. (*See* First Am. Compl. ¶¶ 1, 3).  They also allege that Showcase

21  is a Nevada partnership and that Showcase Retail is a Nevada LLC. (*See id.* ¶¶ 16, 20).

22          Defendants respond that Showcase and Showcase retail are fraudulently joined, such that

23  their presence should not defeat diversity.  Defendants argue that under its lease from Showcase,

24  Mars Retail Group had the sole responsibility to maintain any leasehold improvements in good

25  condition and repair, including interior escalators, such as the one where Ms. Hughes allegedly

1  fell, which were not even installed until after Mars took possession from Showcase.

2      The question is whether Showcase can be liable for injuries to Mars's invitees due to

3  conditions on the land after Mars took possession from Showcase.

4          Except as stated in §§ 357 and 360–362, a lessor of land is not subject to
       liability to his lessee or others upon the land with the consent of the lessee or
5      sublessee for physical harm caused by any dangerous condition which comes into
       existence after the lessee has taken possession.

6  Restatement (Second) of Torts § 355.  Nevada follows this "traditional common law rule." *See*

7  *Wright v. Schum*, 781 P.2d 1142, 1143 (Nev. 1989) (citing *Turpel v. Sayles*, 692 P.2d 1290 (Nev.

8  1985)).  A lessor is liable for conditions arising after the lessee takes possession only where, *inter*

9  *alia*, the lessor has contracted to maintain the land. *Id.* § 357(a).  A lessor is also potentially

10 liable as to any part of the land that he retains under his control or for injuries arising from any

11 negligent repairs he actually makes on the land, regardless of any contract requiring him to

12 maintain the land. *Id.* §§ 360–362.

13     Certain facts do not appear to be in dispute: Mars was Showcase's lessee, Ms. Hughes

14 was Mars's invitee, and the allegedly dangerous condition arose after Mars took possession from

15 Showcase.  The question is whether Showcase had any duty to maintain the premises by contract.

16 The Lease, attached as Exhibit B to the Notice of Removal, (*see* Lease, ECF No. 1-2), notes that

17 the landlord (Showcase) and the tenant (Ethel M. Chocolates) shared responsibility for repairs on

18 the premises. (*See* Lease §§ 15.1–15.2, at 45–47).  The landlord's responsibility is for "the roof,

19 structural portions, the exterior of the Premises, parking facilities . . . and other Common Areas .

20 . . ." (*Id.* § 15.1(a)(1), at 45).  "Premises" is defined as "the specific devised store space leased to

21 Tenant by Landlord . . . ." (*id.* § 1.1(b)), and "Common Areas" is defined as "the 'Atrium' and its

22 amenities, plaza areas, driveways, aisles, sidewalks, loading docks, dock levelers, passageways,

23 landscaping, courts, stairs, ramps, elevators, *escalators*, meeting rooms, public restrooms and

24 other common service areas," (*id.* § 1.1(c) (emphasis added)).  The tenant's responsibility is for,

25

*inter alia*, "any leasehold improvements installed by Tenant (including but not limited to, *any vertical transportation systems within the premises*), and the interior of the Premises . . . ." (*Id.* § 15.2, at 46–47 (emphasis added)).  The Lease therefore makes the tenant liable to maintain escalators within the leased space (the interior of the store), but makes the landlord liable to maintain escalators in common areas (outside areas not under control of the tenant).  Notably, "structural portions and exteriors of the Premises" for which the landlord is liable excludes "store front and entrance doors," making the intention clear that the landlord was not to be responsible for the maintenance or repair of anything within the store itself, because even the boundary between the leased space and the common area, i.e., the store entrances and storefront, were to be maintained by the tenant. (*Id.* § 15.1(b), at 46).  The FAC only identifies the subject escalator as a downward escalator from the fourth floor to the third floor, and it does not specify whether the escalator was within M&M's World or in a common area outside.  It can be implied that the escalator was inside M&M's World, because it is described as "the downward escalator from the fourth to the third floors of M&M'S WORLD." (First Am. Compl. ¶ 31).

In reply, Plaintiffs argue[2] that the lease provision requiring Mars to maintain vertical

_____

[2]Plaintiffs adduce a print-out showing that Showcase Retail is licensed to do business in Clark County, which fact is inapposite to the citizenship of a limited liability company.  The citizenship of Showcase Retail is not clear, but it does not appear to be a Nevada citizen.  The citizenship of a limited liability company is controlled by the citizenships of its members, *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006), and Showcase Retail has a single member, Center City Realty Partners, LLC, whose address is given as San Francisco, CA in the Nevada Secretary of State's website.  The California Secretary of State's website, in turn, lists Center City Realty Partners, LLC as a Delaware limited liability company, but the website of the Delaware Division of Corporations does not return any results for Center City Realty Partners, LLC.  Showcase, however, is a common law partnership (or joint venture, which is a type of partnership in Nevada), and its citizenship is therefore controlled by the citizenships of its partners, *see id.* (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990)), but Plaintiffs do not allege the identity of Showcase's partners.  Nor do Defendants allege the identity of Showcase's partners in the Notice of Removal.  The parties simply refer to it as "a Nevada general partnership," presumably meaning a partnership under the common law of Nevada that operates in Nevada.  But this says nothing of its citizenship.  A partnership may exist entirely in one state and not be a citizen of that state for the purposes of diversity if its

transportation systems within the premises is vague and ambiguous.  Plaintiffs argue that there is no evidence when the subject elevator was installed (Plaintiffs appear to concede that the subject elevator was within the Premises).  In other words, Plaintiffs argue that the contract is at least ambiguous as to whose responsibility it was to maintain an interior escalator that was installed before Mars took possession of the Premises, and it is not clear when the subject elevator was installed.  But the Court finds that the installation date of the subject escalator is inapposite under the contract.  Under the contract, Mars is liable for "any leasehold improvements installed by Tenant (including but not limited to, any vertical transportation systems within the premises), and the interior of the Premises . . . ." (*Id.* § 15.2, at 46–47).  This provision is not ambiguous as to whether Mars or Showcase has to maintain the subject elevator.  Mars's responsibility under this provision is twofold: (1) it is liable for improvements it makes (including interior escalators); and (2) it is liable for the interior of the Premises.  Whether the subject elevator constitutes an improvement made by Mars under the first prong does not matter if the subject elevator was within the interior of the Premises under the second prong.  The provision is not ambiguous in this regard, and it does not appear to be seriously disputed that the subject elevator was within the Premises.

Plaintiffs also argue that § 15.3 provides that Mars was not permitted to make any alterations to the Premises, including to vertical transportation, without Showcase's permission.

---

general partners are all citizens of other states.  For the purposes of the present motion, the Court will assume that the Showcase Defendants are not diverse with certain Plaintiffs, but it is worth noting that Defendants may in fact be completely diverse with Plaintiffs.  Defendants could potentially defeat the motion to remand without resorting to the fraudulent-joinder argument if they simply proved their own citizenship under the law of diversity rather than wrongly assuming, as Plaintiffs also have, that because the Showcase Defendants operate primarily or entirely in Nevada, they must necessarily be Nevada citizens under the diversity statute.  That conclusion does not even necessarily follow for corporations—corporations may operate entirely in one state and still not be a citizen of that state if incorporated elsewhere and if the company's headquarters is outside of the state—much less for limited liability companies and partnerships.

But the same section also notes that any such alterations would not transfer liability to Showcase. And that caveat is superfluous with respect to premises liability, anyway, because § 15.3 does not vitiate the Second Restatement/*Wright* rule that only the tenant is liable for harm to a tenant's invitee caused by alterations a tenant makes after taking possession. It simply requires the tenant to obtain permission form the landlord before making changes to the landlord's property.

Finally, Plaintiffs, after having argued that there is "no evidence" of when the subject escalator was installed, admit that Defendants have adduced Stefan's Affidavit stating that Showcase Retail did not design, install, maintain, etc. the subject escalator. Plaintiffs argue that Stefan's attestation is not credible in light of paragraph 8 of Showcase Retail's Answer because Showcase Retail states therein that it is "without knowledge or information to know whether or not it owns, occupies, operates, lease, controls and manages M&M's World." The Court rejects this argument. Rote recitations in an Answer, like the present one, typically amount to boilerplate denials of knowledge in stock legalese. Stefan's affidavit, solicited by his attorneys after the present issues became clearer, is a better presentation of the facts. If there is any inconsistency, it is the affidavit that is more important in the present context. Plaintiffs adduce no contrary evidence.

Plaintiffs next argue that the duty to maintain an escalator is non-delegable, citing a pre-Second Restatement case from California that cites the First Restatement and which Plaintiffs have improperly cited as having been decided by the Ninth Circuit Court of Appeals. *See Brown v. George Pepperdine Found.*, 143 P.2d 929 (Cal. 1943). Plaintiffs also cite an inapposite pre-First Restatement case from Nevada. *See Smith v. Odd Fellows Bldg. Ass'n*, 205 P. 796, 797–98 (Nev. 1922). *Smith* did not determine whether a building owner cannot transfer its duty to repair or maintain elevators to a tenant, but only that the owner/operator of an elevator has a duty of care as a common carrier. Strictly speaking, it did not even determine that question. The issue appealed and decided in *Smith* concerned contributory negligence. The Court noted that the

1   defendant had not objected below to the instructions that the operator of the elevator had a duty

2   to ensure the safety of invitees, and it noted in passing that it agreed, but the case simply did not

3   concern any landlord versus tenant liability issues. *See generally id.*  The other California cases

4   Plaintiffs cite concern injuries caused to invitees by independent contractors hired by the landlord

5   to perform improvements or repairs on the building.  But Plaintiffs do not allege that the landlord

6   here actually hired any contractors to maintain or repair the subject escalator.  If they do obtain

7   such evidence in discovery, they may rejoin Showcase Defendants and move to remand again.

8       Here, although the duty for invitee safety is presumably non-delegable, the party from

9   whom the duty is non-delegable is controlled by the Second Restatement and contract under

10  *Wright*.  That is, the duty to maintain safe premises in the interior of the store is non-delegable

11  from Mars.  The issues of non-delegability of duty of care to invitees and landlord versus tenant

12  liability are distinct.  Plaintiffs point to no cases in which the doctrine of non-delegability has

13  applied to make a landlord liable for the dereliction of duties imposed upon a tenant by law or

14  contract, but only where the doctrine has been applied to make a party (whether landlord or

15  tenant) liable for the dereliction of its own duty through the use of a negligent contractor, which

16  is the precise case in which the doctrine does apply.[3]  Neither Showcase Retail nor Mars can

17  escape their respective duties to invitees by pointing to the negligence of an independent

18  contractor one of them has hired to perform work, but either Showcase Retail or Mars may

19  indeed point to a common-law or contractual division of duties to show that the ultimate non-

20  delegable duty to maintain the safe condition of a certain portion of the premises lies with the

21

22      [3]The non-delegable duty doctrine is an exception to an exception.  The rule, known as
23  *respondeat superior*, is that persons are liable for the acts of their employees or "servants"
    committed within the scope of employment.  An exception to this rule, known as the independent
24  contractor doctrine, is that persons are not liable for similar acts by their independent contractors
    whose actions they do not closely control.  An exception to this exception, known as the non-
25  delegable duty doctrine, is that landowners cannot escape liability for the acts of their
    independent contractors with respect to the duty to maintain safe premises for invitees.

1   other.  The non-delegable duty doctrine does not conflict with or vitiate *Wright*.[4]

2          The Court will therefore deny the motion to remand, as the court is convinced that no

3   claim lies against the Showcase Defendants.  The evidence adduced makes clear that the duty to

4   maintain and repair the subject elevator fell upon the diverse tenants, not upon the potentially

5   non-diverse landlords.  The latter are therefore fraudulently joined, and their joinder does not

6   defeat removal.

7          **B.     Dismissal**

8          Plaintiffs have pled no separate claim for punitive damages, but have included a prayer

9   for punitive damages.  Mars argues that the allegation that Mars acted "with a conscious

10  disregard, malice and oppression, of the rights, welfare or safety of Decedent and Plaintiffs" and

11  "specifically intended to cause injury to the decedent or was despicable conduct . . . ." is

12  conclusory.  Mars notes that under Nevada law punitive damages are only available to a plaintiff

13  who proves by clear and convincing evidence that the defendant is guilty of "oppression, fraud,

14  or malice, express or implied." Nev. Rev. Stat. § 42.001.  Mars argues that Plaintiffs have not set

15  forth enough factual allegations to make oppression, fraud, or malice plausible in this case.  The

16  types of conduct that might apply in this case are "malice" or "oppression" which are defined as

17  "conduct which is intended to injure a person or despicable conduct which is engaged in with a

18  conscious disregard of the rights or safety of others" and "despicable conduct that subjects a

19  person to cruel and unjust hardship with conscious disregard of the rights of the person,"

20  respectively. *See id.*  Gross negligence or recklessness is not enough. *Wyeth v. Rowatt*, 244 P.3d

21  765, 783 (Nev. 2010).

22  _____

23         [4]Professor Dobbs, for example, explicitly and deliberately uses the term "landowner" to
include "possessors" in this context in his treatise. *See* Dan. B. Dobbs, *The Law of Torts* § 231, at
24  587 (2000).  He confirms the common law and Second Restatement rule of the shifting of the
duty to maintain safe premises from landlord to tenant (subject to contractual agreement) that the
25  Nevada Supreme Court confirmed in *Wright. See id.* § 240, at 625–26.

Mars is correct that although Plaintiffs' allegations may be sufficient to infer negligence or even gross negligence, there is no allegation concerning behavior by Mars that would permit a finding of malice or oppression.  Plaintiffs do not allege that Mars injured Hughes on purpose or knew of a particular unsafe condition and consciously disregarded it, except in conclusory fashion, or that it purposely treated her cruelly. (*See* First Am. Compl. ¶¶ 59–61).  Plaintiffs argue that Mars consciously disregarded statutory and administrative standards concerning escalator installation and maintenance, but the argument is conclusory and does not appear in the Complaint as an allegation.

Refusal to repair a known dangerous condition has been held not to support punitive damages in Nevada, without more. *See Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26–27 (Nev. 1998).  In *Maduike*, a rental car company refused to repair the brakes on a vehicle or replace the car when the plaintiffs brought the car back to the company after experiencing problems with the brakes. *See id.* at 25.  The plaintiffs drove the car home and crashed because of the faulty brakes. *Id.*  The Nevada Supreme Court affirmed the district court's dismissal of the punitive damages claim because the facts did not amount to conscious disregard of the plaintiffs' rights. *See id.* at 26–27.   The Court noted that "even unconscionable irresponsibility will not support a punitive damages award." *Id.* at 26 (quoting *First Interstate Bank v. Jafbros Auto Body*, 787 P.2d 765, 767 (Nev. 1990)).

The Court later retreated from this approach, however, and ruled that the disjunctive "implied malice" prong of the punitive damages statute permits such damages for "conscious disregard" of unsafe conditions. *See Countrywide Home Loans v. Thitchener*, 192 P.3d 293, 253–55 & n.51 (Nev. 2008).  "'Conscious disregard' means the knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." Nev. Rev. Stat. § 42.001(1).   This is the standard applicable to the availability of punitive damages for "implied malice."

1   Defendants are correct that Plaintiffs have only pled conscious disregard in conclusory

2   fashion, but punitive damages is not a separate cause of action that must withstand scrutiny under

3   Rule 8(a).  So long as there is some evidence supporting punitive damages, the issue can go to a

4   jury.  The Court will therefore not strike or dismiss the prayer for punitive damages.  Mars'

5   installation records, maintenance records, and the testimony of its employees may reveal

6   evidence of a conscious disregard of a known defect supporting punitive damages under

7   *Thitchener*.  Plaintiffs are not expected to have such information at the this stage.  So long as

8   they have sufficiently pled a cause of action that could support punitive damages under

9   appropriate circumstances (they have), they may proceed to discovery.  The Court will not permit

10  the jury to consider punitive damages if Plaintiffs provide no evidence of implied malice or some

11  other basis for punitive damages, but the exclusion of punitive damages at this stage would be

12  premature.

### CONCLUSION

14  IT IS HEREBY ORDERED that the Motion to Remand (ECF No. 25) is DENIED.

15  IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 4) is DENIED.

16  IT IS SO ORDERED.

17  Dated this 25th day of April, 2013.

18  _____
                  ROBERT C. JONES
19                United States District Judge